David E. JOHNSON, Appellee,

v.

Pamela JOHNSON n/k/à Pamela K. Blesh, Appellant.

Superior Court of Pennsylvania.

Submitted June 12, 2006.

Filed Sept. 11, 2006.

See also 864 A.2d 1224.

292 ■

Janice R. Yaw, Williamsport, for appellant.

Richard J. Callahan, Williamsport, for appellee.

BEFORE: STEVENS, ORIE MELVIN and POPOVICH, JJ.

## OPINION BY POPOVICH, J.:

¶ 1 Appellant Pamela Johnson n/k/a Pamela Blesh appeals the order entered on February 21, 2006, in the Court of Common Pleas of Clinton County, that denied her petition for special relief that sought to collect certain gains realized by Appellee David E. Johnson from the sale of his vacation home and from the sale of certain investments. Upon review, we affirm in part and remand.

■ ¶ 2 The relevant factual background and procedural history of this case are as follows: The parties were married on August 18, 1966. After 17 years of marriage, the parties separated in August of 1983. A divorce decree was entered on May 24, 1985. Following the divorce, Appellee remarried, but Appellant did not remarry. At the time briefs were submitted in this case, Appellee was 65 years of age and Appellant was 62 years of age. After entry of the divorce decree, the trial court adjudicated the economic issues attendant to the divorce. Thereafter, on March 19, 1986, the trial court entered an order of equitable distribution of the marital estate, supplemented by findings of fact and conclusions of law. In conformity with the equitable distribution order, Appellee was to retain his mill business, Clintondale Mills, while making monthly installment payments of his equitable distribution debt to Appellant.[1] In total, Appellee was to pay Appellant $385,381.00, plus 10% interest, in monthly installments that exceeded $4,000.00. Additionally, Appellee was required to pay $5,000.00 toward Appellant's attorney's fees. The trial court did not award Appellant alimony or alimony *pendente lite*.

¶ 3 Appellee made monthly payments to Appellant pursuant to the March 19, 1986 order until June 1993, whereupon Appellee discontinued payment to Appellant due to the failure of his mill business. Appellant filed numerous petitions to enforce the equitable reimbursement payment schedule and petitions for contempt against Appellant to obtain her equitable distribution award. Thereafter, on March 1, 1995, the trial court entered an order that set a new payment schedule of the balance of the money Appellee owed Appellant, which, at that time, was agreed by the parties to be $304,944.18. The March 1, 1995 payment schedule required that Appellee sell certain assets to pay the equitable distribution debt owed to Appellant; until these assets were sold, Appellee was to pay Appellant monthly installment payments of

---

1. This type of equitable distribution scheme is known as an order of "equitable reimbursement." *See Twilla v. Twilla,* 445 Pa.Super. 86, 664 A.2d 1020 (1995). "Equitable reimbursement" is a judicially-created doctrine whereby a payor spouse pays installment payments to the payee spouse in reimbursement for the payee's spouse's contribution to the marriage, where the existing marital assets, if equitably distributed, would be insufficient to compensate the payee spouse for his or her contribution to the marriage. *Id.,* 664 A.2d at 1023–24.

$ 2,000.00. The payments were to be treated as a reduction of the equitable distribution debt and were to be treated without tax consequence to either Appellee as payor or Appellant as payee. *See* Trial court order, 3/1/1995, at 2–3 (unnumbered). Despite the effect of the order, the trial court characterized its order improperly as "alimony."

¶ 4 Following entry of the trial court's March 1, 1995 order, Appellee filed for bankruptcy protection pursuant to Chapter 7 of the United States Bankruptcy Code, Title 11 U.S.C. § 101, *et seq.* In response, Appellant filed a "petition to establish alimony," in order to prevent Appellee's equitable reimbursement obligation to Appellant from being discharged in bankruptcy. The trial court denied Appellant's petition. Appellant appealed to this Court, and we affirmed the trial court's denial of her petition. *See Johnson v. Blesh,* 455 Pa.Super. 702, 688 A.2d 1234 (1996) (unpublished memorandum).

¶ 5 The U.S. Bankruptcy Court for the Middle District of Pennsylvania dismissed Appellee's bankruptcy petition on September 6, 2000. Thereafter, on November 21, 2001, Appellant filed a petition for contempt/enforcement of the March 1, 1995 equitable distribution order. Appellee did not respond to the petition and, on January 9, 2001, was found in contempt of court and incarcerated in Clinton County Prison. In turn, Appellee filed a motion for bail. The trial court did not address this motion, but, on January 16, 2001, it rescinded its contempt order of January 9, 2001, released Appellee from Clinton County Prison, and issued a rule to show cause why Husband should not be held in contempt of court, returnable on January 30, 2001.

¶ 6 On March 20, 2001, following a hearing, the trial court found Appellee in contempt and ordered him to be incarcerated for six months in Clinton County Prison. The trial court's contempt order also indicated that he could purge himself of the contempt by paying a lump sum of $20,000.00 to Appellant within 45 days of the date of the order. The order also required Appellee to pay Appellant "alimony" in the amount of 40% of his net weekly income or $326.00, whichever was greater. These "alimony" payments were to be collected through wage attachment by the Domestic Relations Office of Clinton County. As before, these "alimony" payments were to be used as payments toward Appellee's equitable distribution debt to Appellant and, therefore, constituted an order of equitable reimbursement. The trial court also ordered Appellee to pay Appellant's attorney's fees associated with the filing of the contempt petition.

¶ 7 On February 12, 2004, Appellee filed a motion for modification of the trial court's order of March 20, 2001. Appellee alleged that his income had dropped precipitously since 2001, and that he was in need of relief from the March 20, 2001 order because he could not work to generate more income to pay his equitable distribution debt due to his health problems.[2] The trial court treated this motion as a motion for special relief pursuant to Pa. R.Civ.P. 1920.43, and it scheduled a hearing on the motion for March 11, 2004. Appellant, in turn, requested that the motion for special relief be dismissed by the trial court, and she filed a memorandum in support of her request.

¶ 8 The trial court conducted a hearing on Appellee's motion, and on March 26, 2004, granted Appellee's motion. Appel-

**2.** Husband's sole income is Social Security Income (SSI), in the amount of $1,209.00 per month.

lant filed a timely notice of appeal to this Court, and we reversed, finding that the trial court's order constituted a forfeiture. *See Johnson v. Johnson*, 864 A.2d 1224 (Pa.Super.2004). Appellee filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which the Court denied. *See Johnson v. Johnson*, 583 Pa. 690, 878 A.2d 865 (2005).

¶ 9 In the fall of 2005, Appellee and his current wife sold their vacation home in Vermont. The vacation home was owned by Appellee and his wife as tenants-by-the-entireties property. Upon learning of the sale of the vacation home, Appellant transferred her money judgment, *i.e.*, the total of Appellee's outstanding equitable reimbursement debt, to Vermont in order to collect on the judgment through the proceeds of the sale of the home.[3] In response, Appellee filed a motion for summary judgment in the Superior Court of Vermont (the Vermont trial court), which the Vermont trial court granted, thereby dismissing the case.

¶ 10 On November 28, 2005, after the conclusion of the Vermont litigation, Appellant filed a petition for special relief in the Clinton County Court of Common Pleas that sought to collect on her judgment through the proceeds of the sale of the Vermont vacation home. The trial court conducted a brief hearing on Appellant's petition on January 19, 2006. At the conclusion of the hearing, the trial court ordered Appellee to provide Appellant his 2003 and 2004 joint federal income tax returns so that she could determine whether anyone paid rent to Appellee from use of the vacation home. The trial court did not decide the matter but, instead, ordered the parties to submit briefs on the issue.

¶ 11 Following review of Appellee's 2004 joint federal income tax return, Appellant

learned that Appellee and his current wife profited from the sale of certain Oppenheimer funds. Accordingly, on February 2, 2006, Appellant filed a second petition for special relief that requested payment of her judgment through the sale of the Oppenheimer funds. The trial court issued an order on February 6, 2006, that held the matter "in abeyance" until the submission of the parties' briefs for the November 28, 2005 petition for special relief.

¶ 12 On February 21, 2005, following submission of the parties' briefs, the trial court denied both the November 28, 2005 petition for special relief and the February 2, 2006 petition for special relief. Appellant, in turn, filed a timely notice of appeal to this Court. The trial court ordered Appellant to file a concise statement of matters complained of on appeal within 14 days of the date of its order, and she complied. Thereafter, on March 13, 2006, the trial court authored an opinion that addressed the issues presented in Appellant's concise statement.

¶ 13 Appellant presents the following issues for our review:

I. Did the trial court err by not finding [the] gains [that] were realized from the sale of Appellee's $450,000.00 vacation home qualified as income as defined by the Pennsylvania support statute?

II. Did the trial court err and abuse its discretion by not holding a hearing on Appellant's request for special relief, as Appellee acquired substantial monies from the sale of his vacation home and by cashing in stocks and bonds which could have been utilized to pay monies owed to Appellant, which have remained unpaid for twenty years?

---

**3.** The amount of the judgment, recorded on August 3, 2005, was $205,585.29.

III. Did the trial court err by not enforcing its March 20, 2001 order which required Appellee to pay 40% of his income on the twenty-year old equitable distribution award?

Appellant's brief, at 4.

■ ¶ 14 We exercise an abuse of discretion standard of review in an appeal from the denial of a petition for special relief under the Domestic Relations Code. *See Johnson*, 864 A.2d at 1229. An abuse of discretion has been explained by the appellate courts of this Commonwealth as more than an error in judgment; we may find an abuse of discretion only on clear and convincing evidence that the trial court misapplied the law or overrode it or that the judgment reached was manifestly unreasonable, or based on bias, ill-will, or partiality. *Id.*, 864 A.2d at 1229.

■ ¶ 15 With regard to Appellant's first issue, we note that this case is not a support case; the debt owed to Appellant by Appellee has its genesis in equitable distribution not a support obligation, and, therefore, Pennsylvania support law has no application to this case. Accordingly, the definition of "income," set forth in the Pennsylvania support statute has no bearing on the matters before this Court. Accordingly, Appellant's argument fails.

■ ¶ 16 We consider next whether the trial court erred by failing to require Appellee to use the proceeds of the sale of the Vermont vacation home to satisfy the equitable distribution debt he owes to Appellant.[4] There is no dispute between the parties that the Vermont vacation home was owned by Appellee and his current wife as tenants-by-the-entireties property. A tenancy by the entireties is a form of co-ownership of real or personal property by husband and wife, with its essential characteristic being that "each spouse is seised *per tout et non per my, i.e.*, of the whole or the entirety and not of a share, moiety or divisible part." *In re Gallagher's Estate*, 352 Pa. 476, 43 A.2d 132 (1945) (citations omitted). When one spouse dies, the surviving spouse takes no new estate; rather, the only change is in the properties of the legal entity holding the estate. *Beihl v. Martin*, 236 Pa. 519, 84 A. 953 (1912). For the duration of the entireties estate, either spouse has the presumptive power to act for both, so long as both spouses share the proceeds, and neither spouse may appropriate property for his or her own use, to the exclusion of the other spouse, without the consent of the other spouse. *Fazekas v. Fazekas*, 737 A.2d 1262, 1264 (Pa.Super.1999). Entireties property is unavailable to satisfy the claims of the creditor of one of the tenants. *Patwardhan v. Brabant*, 294 Pa.Super. 129, 439 A.2d 784 (1982). However, a conveyance in fraud of creditors may be appropriately attacked, but the proceedings must conform to proper procedures. *Id.*, 439 A.2d at 784.

■ ¶ 17 In the present case, the law is clear that the mere sale of the Vermont vacation home does not convert automatically the personal property received as a result of the exchange, *i.e.*, the cash received from the sale, to a form of ownership other than entireties property. *See, Beihl*, at 519, 84 A. 953 (entireties property may be real or personal property); *see also In re Estate of Cambest*, 756 A.2d 45, 53 (Pa.Super.2000) (an intention to create entireties property is assumed from deposit of asset in both names of husband and wife, without more, and from fact of marital relationship). As this Court

---

4. Appellant also asserts that the trial court erred in failing to hold a hearing on this issue. In point of fact, the trial court conducted a brief hearing on this issue, and it heard the arguments of counsel on this issue. Accordingly, we dismiss Appellant's argument.

held in *Sterling v. Smith*, 200 Pa.Super. 544, 189 A.2d 889 (1963), monies received from the sale of entireties property are impressed with the status of entireties property even where the funds are placed into a bank account owned by only one spouse. *Sterling*, 189 A.2d at 890–91. We reached this conclusion because bank deposits payable to husband and wife or to husband or wife, are presumed to be tenancies by the entireties with all the benefits relating to entireties ownership. *Id.,* 189 A.2d at 889. In matters of entireties property, either spouse has the power presumptively to act for both, so long as the marriage continues, without any specific authorization, provided the proceeds of such action inure to the benefit of both and the estate is not terminated. *Id.,* 189 A.2d at 889. Appellant presented no evidence or argument that the funds realized from the sale of the home were for the sole benefit of Appellee or that the sale of the home was made by Appellee and his current wife to defraud Appellant.[5] As such, Appellant cannot attach the proceeds of the sale of the Vermont vacation home to collect on her judgment. *See Patwardhan,* 439 A.2d at 784.

■ ¶ 18 We do not reach the same conclusion with regard to the Oppenheimer funds sold by Appellee and his current wife. Appellant learned of the sale of the Oppenheimer funds after the hearing when she received Appellant's joint federal income tax return. After learning of the sale of the Oppenheimer funds, Appellant filed a prompt second petition for special relief on February 2, 2006, which petition the trial court held "in abeyance" until the submission of briefs on Appellant's previous petition. The trial court did not hold a hearing on the issue of the Oppenheimer funds. Thereafter, on February 21, 2006, the trial court denied both petitions.

■ ¶ 19 There is no indication on the face of the record of the type of joint ownership Appellee and his current wife enjoyed over the Oppenheimer funds and, consequently, there is no indication whether the monies gained from the sale of those funds could be collected by Appellant in satisfaction of her judgment. We recognize that, in this Commonwealth, a presumption exists that property held by a husband and wife is held by the entireties and that said presumption can be overcome only when the opposing party demonstrates, through clear and convincing evidence, that the property was not intended to be held by the husband and wife as entireties property. *See Constitution Bank v. Olson,* 423 Pa.Super. 134, 620 A.2d 1146, 1150 (1993). Nevertheless, because a hearing has not been held on the Oppenheimer funds issue, it is apparent that Appellant has not yet had an opportunity to demonstrate to the trial court that the Oppenheimer funds were not held as en-

---

5. A "fraudulent conveyance" is defined by 12 Pa.C.S.A. § 5105 as follows:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Inasmuch as Appellee and his current wife received more than the purchase price of the Vermont vacation home as a result of its sale, they received a "reasonably equivalent value" for the sale. Therefore, the plain wording of the statute indicates there can be no "fraudulent conveyance" in this instance. *See* 12 Pa.C.S.A. § 5105 (fraudulent conveyance requires transfer of debtor's asset without receipt of equivalent value *and* insolvency of debtor).

■ 297

tireties property and, therefore, that Appellee's gains from the sale of the Oppenheimer funds were collectible to satisfy Appellant's judgment. Consequently, the trial court had little basis on which to conclude that the Oppenheimer funds were owned as tenants by the entireties by Appellee and his current wife. As such, we are constrained to conclude that the trial court abused its discretion when it decided Appellant's February 2, 2006 petition without an adequate record. Consequently, we affirm in part the order of the trial court and remand with the directive that it conduct a hearing to determine the type of joint ownership that Appellee and his current wife enjoyed over the Oppenheimer funds prior to their sale.

¶ 20 Appellant's final issue asserts that the trial court erred by not enforcing its March 20, 2001 order which required Appellee to pay 40% of his income on the twenty-year old equitable distribution award. In fact, Appellee has abided by the March 20, 2001 order by paying 40% of his SSI income to Appellant. Appellant's argument merely reasserts her previous argument that Appellee must pay to her the proceeds of the sale of the Vermont vacation home in satisfaction of his equitable distribution debt. As we have found this argument unavailing, we will not readdress it.

¶ 21 Order affirmed in part. Case remanded with instructions. Jurisdiction relinquished.