J-S81015-18

2019 PA Super 158

| STRASBURG SCOOTERS, LLC | : | IN THE SUPERIOR COURT OF |
| Appellant | : | PENNSYLVANIA |
| | : | |
| V. | : | |
| | : | |
| | : | |
| | : | |
| STRASBURG RAIL ROAD, INC. | : | |
| Appellee | : | |
| | : | No. 1253 MDA 2018 |

Appeal from the Order Entered July 18, 2018
In the Court of Common Pleas of Lancaster County
Civil Division at No: CI-18-02906

BEFORE:  STABILE, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY STABILE, J.:                          **FILED MAY 16, 2019**

Appellant, Strasburg Scooters, LLC ("Scooters"), appeals from an order sustaining the preliminary objections of Strasburg Rail Road ("Rail Road") and dismissing Scooters' complaint with prejudice for lack of subject matter jurisdiction.  Scooters alleged that the manner in which Rail Road uses its side tracks interferes with Scooters' use of real property ("the Property") that Scooters leases from MarNik Holdings ("MarNik").  Scooters asked the trial court to declare that Rail Road has "abandoned" the side tracks or, in the alternative, to define the manner in which Rail Road may use the side tracks.

For two reasons, the trial court correctly determined that it lacked subject matter jurisdiction over this action.  First, under the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. §§ 10101-16106, the federal Surface Transportation Board ("STB") has

---

* Former Justice specially assigned to the Superior Court.

exclusive jurisdiction over the "operation" and "abandonment" of side tracks. 49 U.S.C. § 10501(b)(2). Thus, the STB has exclusive authority to decide whether Rail Road abandoned the side tracks and the manner in which Rail Road may use the side tracks. Second, Scooters failed to join an indispensable party, MarNik, which had a direct and substantial interest in this action as the owner of the Property. Accordingly, we affirm.

Scooters is in the business of providing guided scooter tours through Lancaster County from the Property, which is located at 242 Gap Road in Ronks, Pennsylvania ("the Property"). Complaint, ¶ 3. Scooters uses the Property to store its scooters, train customers and otherwise operate its business. *Id.*, ¶ 4. The deed appended to the complaint demonstrates that Scooters does not own the Property. *Id.*, ¶ 4 & exhibit A. Instead, Scooters leases the Property from MarNik, successors in interest to Crusemire & Williams LLC. *Id.*

Rail Road, a corporation located at 301 Gap Road in Ronks, Pennsylvania, is in the business of providing recreational rides and activities to tourists and also provides freight services in sections of the railway not abutting the Property. *Id.*, ¶¶ 2, 5, 9.

On April 24, 2018, Scooters filed a declaratory judgment action against Rail Road seeking relief relating to the right-of-way. Scooters did not name MarNik Holdings as a party in this action. Scooters alleged that the Property is subject to a right-of-way for the benefit of Rail Road's property that was

established in an 1897 deed to Rail Road's predecessor in title. *Id.*, ¶¶ 6, 8 & exhibit A. The right-of-way permitted

> use [of] the tracks now lying on the premises formerly of Philip Lebzelter, his heirs and assigns, as the **side tracks**, to place and run engines and cars on the same, together with the rights and privileges to enter upon said premises or repair tracks as often as occasion may require, always acting with discretion and fairness.

*Id.*, ¶ 7 (emphasis added). When the right-of-way was created in 1897, it was used only for freight hauling services to local businesses, not for providing pleasure excursions. *Id.*, ¶ 9.

Scooters alleged that Rail Road abandoned the "predicate underlying use" of the right-of-way by changing its business from freight hauling to pleasure excursions. *Id.*, ¶ 11. In addition, Scooters claimed that Rail Road infringed on Scooters' rights by

> a. Parking its railroad cars on the right-of-way, thereby substantially impinging on [] Scooters' use of the Property.
>
> b. Showing indifference to the safety of individuals utilizing [] Scooters' property as demonstrated by a number of occasions whereby the Rail Road has chosen to cause damage to personal property of [] Scooters, rather than contact [] Scooters or otherwise take steps to avoid same, which could have easily been done. This includes, among other things:
>
>> i. Failing to notify the owners of [] Scooters, Marc Crusemire and Nicole Mosuly, of exercise of its rights under the right-of-way and hitting scooters parked on the parking lot of [] Scooters;
>>
>> ii. Simply tossing personal property of [] Scooters aside when the rail road chooses to do maintenance without notifying [] Scooters' management of its intent to do same;

c. Showing indifference to possible damage to [] Scooters and/or its customers, as evidenced by the exchange of correspondence between the [] Rail Road relative to concerns voiced by [] Scooters.

*Id.*, ¶ 12.

Scooters requested that the trial court "declare the right-of-way benefiting [] Rail Road . . . abandoned and to extinguish same; or in the alternative, to enter an order defining the parameters of the exercise of the right-of-way by [] Rail Road." *Id.*, Prayer for Relief.

On May 18, 2018, Rail Road filed preliminary objections seeking dismissal of the complaint for lack of subject matter jurisdiction. On July 17, 2018, the trial court sustained Rail Road's preliminary objections and dismissed the complaint. The court found that

Rail Road's storage of cars and access to the cars using its right-of-way over Scooters' property falls within the definition of the 'operation of side tracks' [in the ICCTA] and [the question] whether the Rail Road has abandoned its right-of-way by abandoning the 'predicate underlying use' falls within the definition of 'abandonment of side tracks' [in the ICCTA].

Trial Ct. Op., 8/30/18, at 4. The court ruled that STB had exclusive jurisdiction to resolve the issue of abandonment. *Id.* at 4-5.

Scooters filed a timely appeal, and both Scooters and the trial court complied with Pa.R.A.P. 1925. Scooters raises two issues in this appeal:

1. Whether the Trial Court erred in granting the Preliminary Objections of [Rail Road] by finding that the Surface Transportation Board has exclusive subject matter jurisdiction over the request of [Scooters] that the Court interpret a private, contractual obligation of the parties?

> 2. Whether Trial Court erred in applying [ICCTA] to claims that do not involve state or local laws or regulations affecting railroad transportation?

Scooters' Brief at 4. Both questions effectively raise the same issue: whether the STB has exclusive jurisdiction over Scooters' action against Rail Road.

Subject matter jurisdiction "relates to the competency of the individual court . . . to determine controversies of the general class to which a particular case belongs." ***Green Acres Rehab. & Nursing Ctr. v. Sullivan***, 113 A.3d 1261, 1268 (Pa. Super. 2015). "The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved . . . ." ***In re Patterson's Estate***, 19 A.2d 165, 166 (Pa. 1941). Moreover, it is "well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void . . . ." ***Com. ex rel. Howard v. Howard***, 10 A.2d 779, 781 (Pa. Super. 1940). The question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*. ***Grimm v. Grimm***, 149 A.3d 77, 82 (Pa. Super. 2016). Because jurisdiction is a pure question of law, our standard of review is *de novo*, and our scope of review is plenary. ***Id.***

The trial court held that the STB had exclusive jurisdiction over this dispute under 49 U.S.C. § 10501(b), which provides:

The jurisdiction of the [STB] over—

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, **operation, abandonment**, or discontinuance of spur, industrial, team, switching, or **side tracks**, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is **exclusive**. Except as otherwise provided in this part, **the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.**

49 U.S.C. § 10501(b) (emphasis added). The "part" referenced in this provision is Part A of Subtitle IV of Title 49, 49 U.S.C. §§ 10101-11908.

Federal courts have repeatedly held that Section 10501(b) preempts state law actions concerning rail operations on the ground that the state law actions are "regulatory." For example, in **B & S Holdings, LLC v. BNSF Ry. Co.**, 889 F.Supp.2d 1252 (E.D. Wash. 2012), a landowner filed a state law adverse possession claim seeking fee simple title to a portion of the railroad's property. The district court held that the ICCTA preempted this claim "because not only would it interfere with railroad operations, but would divest the railroad of the very property with which it conducts its operations." **Id.** at 1258. Next, in **Maynard v. CSX Transportation Co.**, 360 F.Supp.2d 836 (E.D. Ky. 2004), a railroad acquired a right-of-way from the plaintiffs' predecessors in title in 1902. The railroad later built a side track near the

main rail line. The plaintiffs filed an action to prohibit the railroad from blocking access to their homes by leaving trains on the side track for lengthy time periods. The plaintiffs asserted that their action involved "the enforcement of basic contract rights by a state court in matters where right-of-ways were granted by land owners who kept certain crossing rights and those rights are being violated." *Id.* at 838. The district court held that ICCTA preemption applied:

> The side tracks at issue in this case are an essential part of [the railroad's] railroad operations and assist in providing rail service to the AEP Kentucky Coal's loading facility adjacent to Plaintiffs' property. But for the side track, a train being used to transport coal would have to stay on the mainline track, which would interfere with the movement of commerce. The side tracks allow the mainline track to be open for other rail travel, which enhances the movement of commerce on the rail lines. Because of their essential role, side tracks are a vital part of [the] railroad['s] operations. Because it is [the railroad's] construction and operation of the side tracks in this case which give rise to Plaintiffs' claims, those claims are expressly preempted by the ICCTA.

*Id.* at 842.[1]

---

[1] *See also Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1069 (11th Cir. 2010) (state law nuisance claim preempted under ICCTA because remedy sought would limit use or operation of side track); *Friberg v. Kansas City Southern Railway Co.*, 267 F.3d 439, 444 (5th Cir. 2001) (common law negligence action for freight cars blocking grade crossing and limiting access to property preempted); *Cedarapids, Inc. v. Chicago, Central and Pacific R.R. Co.*, 265 F.Supp.2d 1005, 1014-15 (N.D. Iowa 2003) (state court suit by lessee of property, subject to railroad right of way, seeking injunction barring railroad-lessor's use of trackage in question and rescission of lease preempted); *Rushing v. Kansas City S. Ry. Co.*, 194 F.Supp.2d 493, 500–01 (S.D.Miss. 2001) (ICCTA preempts state law nuisance and negligence claims intended to interfere with railroad's operation of switchyard); *Guckenberg v. Wisconsin Central Ltd.*, 178 F.Supp.2d 954, 958 (E.D. Wis. 2001) (common law nuisance action concerning switching of rail cars on side track preempted).

Simply put, if an action falls within Section 10501(b)(1) or (b)(2)—if, for example, an action concerns the "operation" or "abandonment" of side tracks—the trial court must dismiss the action due to the STB's exclusive jurisdiction over the proceedings.

Here, Scooters' complaint alleges that Rail Road infringed on Scooters' use of its property by parking railroad cars on the right-of-way and damaging Scooters' personal property. Scooters further alleges that Rail Road abandoned the predicate use of the right-of-way by changing its business from freight hauling to pleasure excursions. Scooters asks the court to declare that Rail Road "abandoned" its right-of-way or to "defin[e] the parameters of the exercise of use of the right-of-way by [Rail Road]." Complaint, Prayer for Relief.

Scooters' request to find the right-of-way "abandoned" falls expressly within Section 10501(b)(2), which provides that STB has exclusive jurisdiction over "abandonment" of "side tracks." Scooters' alternate request for the court to define the parameters of use of the right-of-way falls within Section 10501(b)(2) as well, because it concerns the "operation" of the side tracks, once again a subject over which the STB has exclusive jurisdiction. Because the STB has exclusive jurisdiction over both issues, the trial court properly dismissed Scooters' action for lack of subject matter jurisdiction.

There is a second and equally serious jurisdictional defect in this case: Scooters' failure to join MarNik, the owner of the Property, as a party. The

failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction. *Northern Forests II, Inc. v. Keta Realty Co.,* 130 A.3d 19, 28-29 (Pa. Super. 2015). Failure to join an indispensable party "should be raised *sua sponte*." *Barren v. Dubas*, 441 A.2d 1315, 1316 (Pa. Super. 1982). Accordingly, we raise this issue even though the parties and trial court did not.

> A party is indispensable
>
> when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation:
>
> > 1. Do absent parties have a right or an interest related to the claim?
> >
> > 2. If so, what is the nature of that right or interest?
> >
> > 3. Is that right or interest essential to the merits of the issue?
> >
> > 4. Can justice be afforded without violating the due process rights of absent parties?
>
> In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.
>
> This Court has held that in a quiet title action, all parties who claimed title to the property at issue must be joined as indispensable parties.

*Northern Forests II*, 130 A.3d at 29 (citations and quotation marks omitted).

In **Barren**, we cited a number of decisions for the proposition that the fee owner of land is an indispensable party to litigation over the right to use and enjoy his property.  We explained:

> In **Columbia Gas Transmission Corp. v. Diamond Fuel Co.**, [346 A.2d 788 (Pa. 1975),] our Supreme Court vacated a decree recognizing the existence of a disputed maintenance and repair right of way because the litigants had failed to join the fee owner of the servient tenement.
>
> > In the instant case there can be no question that the fee simple owner of the servient tenement is an indispensable party.  The right to the use and enjoyment of his property will be adversely affected by any litigation involving the easement and, therefore, he must be joined.  The failure to do so deprives the court of jurisdiction.
>
> 346 A.2d at 789.  Similarly, when there is a dispute as to the existence of an easement, all owners of servient tenements have a material interest in the controversy and should be joined as defendants, even though such an owner may have had no part in the interference with, or obstruction of, the alleged easement. Annot., 28 A.L.R.2d 409, 411 (1953) ("Necessary parties defendant to suit to prevent or remove obstruction or interference with easement of way").  **Cf. Huston v. Campanini**, [346 A.2d 258 (Pa. 1975)] (persons to whom vendors allegedly sold restaurant after declaring forfeiture and repossession from plaintiffs were possible bona fide purchasers, and, therefore, indispensable parties); **Tigue v. Basalyga**, [304 A.2d 119 (Pa. 1973)] (in suit to set aside deed allegedly obtained through fraud, deceased's personal representative was indispensable party); **Kelley v. Kelley**, [] 115 A.2d 202 ([Pa.] 1955) (when adjudicating interests in coal lands, all co-tenants are indispensable parties); **Biernacki v. Redevelopment Authority of the City of Wilkes-Barre**, [379 A.2d 1366 (Pa. Cmwlth. 1977)] ("Clearly, the owner of real estate is an indispensable party to proceedings seeking transfer of the title to the property to another and culminating in an order purporting vesting title in another.  It would be difficult to imagine a darker cloud on one's title than that created by the court's order in this case.") (condemnation case).

*Id.*, 441 A.2d at 1316-17.

The present dispute concerns the use of the right-of-way running through property owned by MarNik. As the fee owner of the Property, MarNik has a material interest in this dispute, and justice cannot be done in its absence. ***Northern Forests II***, 130 A.3d at 29; ***Barren***, 441 A.2d at 1316-17. This provides an additional reason for affirming the trial court's order granting Rail Road's motion to dismiss.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/16/2019