2025 PA Super 147

| | | |
|---|---|---|
| MA-SA CONSTRUCTION, LLC AND MURAT ASLANSAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 466 EDA 2024 |
| BENJAMIN TROPP AND JESSICA DONAHUE TROPP | : | |

Appeal from the Order Entered January 10, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 231000955

BEFORE: BOWES, J., STABILE, J., and KUNSELMAN, J.

OPINION BY STABILE, J.: **FILED JULY 17, 2025**

Appellee, Benjamin Tropp, filed an arbitration action against Appellants, MA-SA Construction, LLC ("MA-SA") and Murat Aslansan ("Aslansan"), alleging that Appellants breached a contract to renovate a residence that Benjamin owned along with his spouse, co-Appellee Jessica Donahue Tropp. An arbitrator entered an award in favor of Benjamin Tropp. Appellants filed a petition in the Court of Common Pleas of Philadelphia County to vacate or modify the arbitration award in accordance with the Revised Statutory Arbitration Act ("RSAA"), 42 Pa.C.S.A. §§ 7321.1-7321.31. The court denied Appellants' petition, and Appellants appealed to this Court.

This appeal raises two questions of subject matter jurisdiction: (1) whether the arbitrator and the court lacked jurisdiction due to Benjamin Tropp's failure to join an alleged indispensable party, his wife, Jessica, as a plaintiff in this action; and (2) whether Appellants timely filed their petition to

vacate or modify in the court of common pleas under the RSAA's statutory time limits. We hold that Jessica Tropp is not an indispensable party, and we remand this case to the court of common pleas for further proceedings concerning the issue of timeliness.

On January 26, 2021, Benjamin and Jessica Tropp entered into an agreement to pay MA-SA $147,000.00 to renovate their home in Philadelphia on or before June 30, 2021. The agreement provided it would "be construed in accordance with and governed by the laws of the State of Pennsylvania." Agreement, 1/26/21, at ¶ 23. The agreement further provided:

> Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules [including the Optional Rules for Emergency Measures of Protection], and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

*Id.* at ¶ 19. Aslansan signed the agreement in his capacity as MA-SA's managing member.

In March 2022, MA-SA abandoned the project without completing the renovations. The Tropps hired other contractors to complete the project and correct deficiencies in MA-SA's work.

On January 10, 2023, Benjamin Tropp (but not Jessica Tropp) initiated arbitration proceedings against both MA-SA and Aslansan seeking damages of $149,979.96 for completion and correction construction costs. The complaint

- 2 -

filed with the American Arbitration Association ("AAA") is not included in the certified record. The AAA selected Peter Liloia, III as Arbitrator.

Appellants do not dispute that they received proper service of the arbitration complaint. The record reflects that the AAA repeatedly notified Appellants of upcoming arbitration proceedings and hearings via certified mail delivered to Appellants' last known address. Additional notifications were sent to Appellants' acknowledged email addresses that they had given the Tropps during the construction process. The emails included critical details about the arbitration proceedings, response deadlines, and participation instructions.

On May 19, 2023, Appellants failed to appear without explanation at a scheduled arbitration preliminary hearing. The arbitrator held:

> I find that due notice was given by the AAA to [Appellants] of the preliminary hearing and of the arbitration proceedings. Therefore, in accordance with Rule R-32, Arbitration in the Absence of a Party or Representative, of the Commercial Arbitration Rules of the [AAA], the arbitration shall proceed.

Scheduling Order No. 1, 5/23/23.

On July 28, 2023, the arbitration proceeded remotely via the Zoom meeting application. Benjamin Tropp, appearing *pro se*, testified and introduced a series of exhibits. Appellants did not participate in the arbitration.

In a decision dated August 31, 2023, the arbitrator found that Appellants "were negligent in their performance and in material breach of contract. They failed to meet the contract time schedule, installed numerous items of work

which were not in accordance with the plans and specifications, and abandoned the project with much work remaining to be completed." Award, 8/31/23, at 2. The arbitrator entered an award in favor of Benjamin Tropp and against Appellants in the amount of $149,979.96 for construction and defect correction costs, $536.32 for costs, and AAA fees of $7,185.00, for a total amount of $157,701.28. The arbitrator denied Benjamin Tropp's request for punitive damages.

On September 7, 2023, Aslansan emailed a letter to the arbitrator stating, "I am in receipt of the August 31, 2023 Award . . ." Letter, 9/7/23, at 1. Aslansan argued that he was not a party to the agreement with the Tropps, and therefore "the award entered against myself, personally, was in error and the Award should be modified accordingly." *Id.* On September 25, 2023, Aslansan emailed a second letter to the arbitrator raising a similar argument—specifically, that he was not a party to the agreement with Benjamin and Jessica Tropp, and there was no evidence that permitted the arbitrator to pierce MA-SA's corporate veil and find him personally liable. Aslansan's letters referred to MA-SA in passing but did not request that the arbitrator modify the award against MA-SA.

On September 27, 2023, the arbitrator entered a decision denying Aslansan's request for modification of the August 31, 2023 award.

On Monday, October 9, 2023, Appellants filed a "petition to vacate and/or modify" the arbitration award and a supporting memorandum of law

in the Court of Common Pleas of Philadelphia County. Appellants named both Benjamin and Jessica Tropp as respondents to the petition even though the arbitration award was only entered in favor of Benjamin Tropp.

On January 10, 2024, the court denied Appellants' petition and entered judgment in favor of Benjamin Tropp in the amount of $157,701.28. On February 6, 2024, Appellants filed a notice of appeal to this Court. Both Appellants and the court complied with Pa.R.A.P. 1925. In their Pa.R.A.P. 1925 statement of matters complained of on appeal, Appellants asserted, *inter alia*, that the court lacked jurisdiction to enter judgment due to the failure to join an alleged indispensable party, Jessica Tropp. The trial court, however, did not address this issue in its Rule 1925 opinion.

Appellants raise eight issues in this appeal:

1. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the underlying common law arbitration award based on the fact the AAA arbitrator who made said award was not licensed to practice in Pennsylvania and was manifestly ignorant of the application of relevant Pennsylvania contract and construction law principles at issue in this purported Pennsylvania construction contract dispute?

2. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the underlying arbitration award given the excessiveness and unconscionability of the award, as well as its facial invalidity?

3. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award in violation of 42 Pa.C.S.A. §§ 7321.24-25?

4. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award given Appellants were denied their right to proper notice and opportunity to be

- 5 -

heard, the arbitration order was made without jurisdiction, and the arbitrator exceeded the scope of the arbitration agreement, among other patent irregularities of the arbitration?

5. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award given the evident partiality and misconduct of the arbitrator and claimant, prejudicing the rights of Appellants?

6. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award given the Court merely relied upon the text of Pa.C.S.A. §§ 7321.24 and 7321.25, and ignored and/or misapplied the pertinent interpretations of these statutes by the Pennsylvania Superior Court?

7. Whether the Trial Court abused its discretion and/or erred as a matter of law in confirming the arbitration award given Appellee, the arbitrator and AAA failed to adhere to AAA's mandated policies regarding the underlying arbitration?

8. Whether the Trial Court abused its discretion and/or erred as a matter of law in essentially cross-examining Appellant Murat Aslansan at the initial Rule to Show Cause hearing, not permitting him to fully testify regarding concerns pertinent to the Petition, preventing Appellants' counsel to fully examine either Mr. Aslansan or either of the Appellees at the Rule to Show Cause hearings, permitting Appellee additional time to provide unauthenticated evidence to the significant prejudice of Appellants, improperly and only nominally "bifurcating" the issues pertinent to the Petition, and refusing to consider other relevant testimony and evidence material to the Petition?

Appellants' Brief at 3-4.

Before examining the issues raised by Appellants, we must examine two preliminary questions of subject matter jurisdiction: (1) whether the arbitrator had jurisdiction to enter an award, and whether the court had jurisdiction to enter judgment on the award, when Jessica Tropp, an alleged indispensable party, was not joined as a party to the arbitration, and (2) whether Appellants

appealed the arbitration award to the court of common pleas within the statutory time limits prescribed under the RSAA. We address the indispensable party issue first, because courts may raise this issue at any time. ***Strasburg Scooters, LLC v. Strasburg Rail Rd., Inc.***, 210 A.3d 1064, 1067 (Pa. Super. 2019).

Under Pennsylvania law, "the failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction." ***Strasburg Scooters***, 210 A.3d at 1069. "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented." ***Schultz v. MMI Prod., Inc.***, 30 A.3d 1224, 1226 (Pa. Super. 2011). "Lack of jurisdiction of a court or administrative tribunal to act in a matter is an issue that cannot be waived by the parties, nor can the parties confer subject matter jurisdiction on a court or tribunal by agreement or stipulation." ***Carr v. First Commonwealth Bank***, 335 A.3d 1199, 1202 (Pa. Super. 2025). "The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved[.]" ***Strasburg Scooters,*** 210 A.3d at 1067. "[A] judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void." ***Id***. Failure to join an indispensable party goes absolutely to the court's jurisdiction and the issue should be raised *sua*

*sponte*." ***Northern Forests II, Inc. v. Keta Realty Company***, 130 A.3d 19, 29 (Pa. Super. 2015) (addressing indispensable party issue over twenty years after entry of judgment). Subject matter jurisdiction raises a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***Id.***

We apply the following standards in determining whether Jessica is an indispensable party:

> A party is indispensable
>
> when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation:
>
> 1. Do absent parties have a right or an interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?
>
> In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.

***Strasburg Scooters,*** 210 A.3d at 1069.

Based on the relevant caselaw, we hold that Jessica Tropp is not an indispensable party. ***See J.R. Christ Construction Co. v. Olevsky***, 232

- 8 -

A.2d 196 (Pa. 1967); ***Miller v. Benjamin Coal Co.,*** 625 A.2d 66 (Pa. Super. 1993). In ***J.R. Christ Construction Co.***, a construction company filed an action against a husband and wife alleging that they were indebted to the company for rental of heavy-duty equipment used for grading and excavation work on a farm owned by the spouses as tenants by the entireties.[1] The wife argued that she was not liable because husband alone had entered an oral rental agreement with the construction company. The trial court found the wife liable, and the Supreme Court affirmed. The Court observed that when real estate is held by the entireties, "neither spouse, acting independently, may create or terminate any legal interest in the land to the prejudice of the other spouse." ***Id.***, 232 A.2d at 199. The Court continued, however:

> There is, ... with respect to entireties property, a well established presumption that during the term of a marriage either spouse has the power to act for both, without specific authorization, so long as the benefits of such action inure to both … This presumption may be rebutted by evidence that the spouse acting was not in fact authorized by the other spouse....
>
> This presumption … does not require knowledge on the part of the other spouse in question, but only that it may be rebutted if, in fact, the spouse so acting was not authorized to act by the other spouse.

---

[1] A tenancy by the entireties is a form of co-ownership of real or personal property by husband and wife, by which together they own title or the entirety and not of a share. ***Johnson v. Johnson***, 908 A.2d 290, 295 (Pa. Super. 2006). When one spouse dies, the surviving spouse takes no new estate; rather, the only change is in the properties of the legal entity holding the estate. ***Id.***

*Id.* The Court held that the record did not reveal any evidence that the wife did not authorize the husband's acts. Moreover, the contract with the construction company benefited both spouses because it related to improvement of entireties property. Thus, the wife failed to rebut the presumption that she authorized husband's act of entering the contract. *Id.*

In *Miller*, a truck owned by a husband and wife incurred damage in a traffic accident. The husband, but not the wife, sued the other driver to recover the full amount of damage to the truck. The trial court denied the other driver's request for a directed verdict on the ground that the wife was an indispensable party who had not been joined, and the court entered a verdict in favor of the husband. On appeal, this Court rejected the other driver's contention that the wife was an indispensable party. We reasoned:

> Our research . . . has disclosed neither Superior Court nor Supreme Court decision which holds that an action for money damages to entireties property cannot be maintained by one of the spouses acting as agent for both tenants by the entireties ….
>
> [Furthermore], either spouse has authority to contract for improvements to entireties property so long as the contract inures to the benefit of both spouses. *J.R. Christ Construction Co. v. Olevsky, supra.* So, too, authority of one spouse to give notice of termination of a lease of property held by the entireties is presumed so long as it benefits both spouses. *Kennedy v. Erkman, supra. See also*: *Bradney v. Sakelson,* 325 Pa. Super. 519, 473 A.2d 189 (1984); *Sgro v. Sgro,* 259 Pa. Super. 425, 393 A.2d 900 (1978). Why, then, shouldn't a spouse with appropriate authority be allowed to maintain an action for damage to entireties property, where such recovery will benefit both spouses?
>
> A party was said to be indispensable, in *Hartley v. Langkamp & Elder,* 243 Pa. 550, 90 A. 402 (1914), "when he has such an

- 10 -

interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience.... Thus where the object of a bill is to divest a title to property, the presence of those holding or claiming such title is indispensable." *Id.* at 555–556, 90 A. at 403–404.

It must be conceded, surely, that in actions intended to affect the title to property which is either held or claimed by tenants by the entireties, both spouses are indispensable parties and must be joined. Where a marriage continues to exist, however, we perceive no reason for holding that one spouse cannot act as agent for the entireties estate in bringing an action to recover damages for injury to the entireties property so long as the action benefits both spouses and there is no evidence rebutting the presumption of authority to act. A final judgment for damages in such an action does not affect the title to or possession of entireties property. Neither does it leave the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience.

*Id.* at 67-68.

*J.R. Christ Construction Co.* teaches that a spouse can be held liable for a contract entered into by the other spouse for improvement to entireties property where the contract inures to both spouses' benefit and where no evidence rebuts the contracting spouse's authority to act. *Miller* teaches that one spouse can sue for damages to entireties property without joining the other spouse where the action benefits both spouses and there is no evidence rebutting the presumption of the prosecuting spouse's authority to act. It is a natural extension of these decisions to hold, as we do now, that one spouse may prosecute a civil action against a third party for breaching a contract to improve entireties property without joining the other spouse as a plaintiff,

where the action benefits both spouses and there is no evidence rebutting the prosecuting spouse's authority to act.

In this case, Benjamin Tropp prosecuted an action against Appellants for breaching a contract to renovate entireties property (the marital residence) without joining his spouse, Jessica, as a plaintiff. This action for damages benefits both spouses, and Appellants failed to present any evidence to rebut Benjamin authority to act as an agent for Jessica. Accordingly, we hold that Jessica Tropp is not an indispensable party to this action.

We acknowledge, as did **J.R. Christ Construction Co.** and **Miller**, that both spouses are indispensable parties and must be joined in actions intended to affect the title to property which is either held or claimed by tenants by the entireties. This principle does not apply here, however, because this action was not intended to affect the title to entireties property.

The second question of subject matter jurisdiction before us is whether Appellants timely appealed the arbitration award to the court of common pleas within the statutory appeal periods prescribed in the RSAA. Appellants appealed to the court of common pleas by filing a petition both to vacate and modify the arbitration award. The RSAA provides a ninety-day appeal period for motions to modify an arbitration award but only a thirty-day appeal period for motions to vacate. To the extent that Appellants' petition constitutes a motion to modify, it was timely. To the extent that the petition constitutes a motion to vacate, it is unclear whether the petition was timely filed within the

- 12 -

thirty-day appeal period. We find it necessary to remand for further proceedings on (1) whether the issues in Appellants' petition sought modification or *vacatur*, and (2) whether any issues seeking *vacatur* were timely raised.

To elaborate, Pennsylvania law "establishes three types of arbitration by agreement of the parties: (1) common law arbitration, ***see*** 42 Pa.C.S.A. §§ 7302(a), 7341-7342; (2) statutory arbitration under the Uniform Arbitration Act, ***see*** 42 Pa.C.S.A. §§ 7301-7320; and (3) statutory arbitration under the [RSAA]." ***International Processplants and Equipment Corporation v. Metro Industrial Wrecking and Environmental Contractors, Inc.,*** 2023 WL 6629713, *1 n.2 (Pa. Super. 2023). The RSAA applies to the present case because the date of the home renovation contract, including its clause agreeing to submit all disputes to arbitration, was January 26, 2021, subsequent to the RSAA's effective date of July 1, 2019. ***See*** 42 Pa.C.S.A. § 7321.4(a) (RSAA governs all agreements to arbitrate made on or after its effective date).

The court of common pleas lacks jurisdiction over an appeal from an arbitration award when the appellant fails to appeal within the statutory appeal period. ***Carr***, 335 A.3d at 1203. In ***Carr***, a common law arbitration case, the statutory appeal period from an arbitration award was thirty days, ***see*** 42 Pa.C.S.A. § 7342(b), but the plaintiffs failed to appeal until 85 days after entry of the award. This Court reasoned:

> "In a common-law-arbitration case, the parties have only 30 days to challenge the arbitrators' award." *Hall v. Nationwide Mutual Ins. Co.*, 629 A.2d 954, 957 (Pa. Super. 1993). The General Assembly has commanded that, if a party petitions to confirm a common-law-arbitration award and 30 days have passed since the issuance of the award, "the court **shall** enter an order confirming the award and **shall** enter a judgment or decree in conformity with the order." 42 Pa.C.S.A. § 7342(b) (emphasis added).
>
> Interpreting that section, this Court has said, "any issues a party wishes to raise must be raised within 30 days of the date of the award, since after that time it is mandatory for the trial court to confirm an award upon application of either party." *Hall*, 629 A.2d at 957. "This is in keeping with the 30-day time period for appeals established by the legislature in other types of cases." *Id.* Thus, we have directly analogized the time in which to seek review of a common-law-arbitration award to the filing of any other appeal.
>
> Essentially, 42 Pa.C.S.A. § 7342(b), the statute setting forth the time period for appealing an arbitration award, functions like Pennsylvania Rule of Appellate Procedure 903. Rule 903 "requires that all 'notices of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken.'" *Whittaker v. Lu*, 323 A.3d 871, 875 (Pa. Super. 2024) (quoting Pa.R.A.P. 903).
>
> We hold that the plain language of Section 7342(b), like Rule 903, is jurisdictional, because that statute deprives the trial court of competency to review the merits of an arbitrator's award if no party challenges the award within 30 days. "Because this filing period is jurisdictional in nature, it must be strictly construed and may not be extended as a matter of indulgence or grace." *Id.*

*Id.* Since the plaintiffs failed to appeal to the court of common pleas until after the appeal period expired, their appeal was untimely, and the court of common pleas lacked jurisdiction to entertain it. *Id.* at 1206-07.

Whereas *Carr* was a common law arbitration case, the present case is governed by the RSAA, because the parties entered their agreement in 2021,

subsequent to the RSAA's effective date of July 1, 2019. *See* 42 Pa.C.S.A. § 7321.4(a) (RSAA governs all agreements to arbitrate made on or after its effective date). All appeal procedures under the RSAA commence with entry of an arbitration award. *See* 42 Pa.C.S.A. § 7321.20 (arbitrator "shall make a record of an award," and "shall give notice of the award, including a copy of the award, to each party to the arbitration proceeding").

The RSAA authorizes two types of appeals to the court of common pleas: a motion to modify or correct the award and a motion to vacate the award. These motions have different statutory deadlines. A motion to modify or correct must be filed within 90 days after notice of the award. 42 Pa.C.S.A. § 7321.25(a). A motion to vacate

> must be filed within 30 days after the movant receives notice of the award under section 7321.20 . . . or within 30 days after the movant receives notice of a modified or corrected award under section 7321.21 . . . unless the movant alleges that the award was procured by corruption, fraud or other undue means, in which case the motion must be made within 30 days after the ground is known or by the exercise of reasonable care would have been known by the movant.

42 Pa.C.S.A. § 7321.24(b) (emphasis added). A movant may consolidate a motion to modify or correct with a motion to vacate. 42 Pa.C.S.A. § 7321.25(c). The mandatory language of Section 7321.24(b) makes clear, however, that to the extent the consolidated motion seeks *vacatur*, it must be filed within thirty days after notice of the award. *See id.* (motion to vacate "***must be filed*** within 30 days after the movant receives notice of the award")

(emphasis added).[2]  Although Section 7321.25(c) allows for consolidation of a motion to vacate with a motion to modify or correct an award, nothing in this provision extends the time in which to seek *vacatur* when that request is combined with one to modify or correct an award.  Had our legislature intended to do so, it would have prescribed expressly that the time to seek *vacatur* is enlarged from 30 to 90 days if sought in conjunction with a motion to modify or correct an award.  Absent such legislative direction, we apply the plain and unambiguous language within Section 7321.24(b) mandating that a motion to vacate be filed within 30 days of receipt of an award.[3]  ***See*** 1 Pa.C.S.A. § 1921(b) (when words of statute are clear and free from all ambiguity, its letter is not to be disregarded under pretext of pursuing its spirit).

We ruled in ***Carr*** that the statutory time limit for appealing a common law arbitration award is jurisdictional in nature.  Similarly, the statutory time

---

[2] One other appeal procedure deserves mention.  Within twenty days after notice of the arbitration award, a party may (but is not required to) file a motion with the arbitrator seeking modification or correction of the award.  If the arbitrator modifies or corrects the award, the appeal period to the court of common pleas begins running when the movant receives notice of the modified or corrected award.  ***See*** 42 Pa.C.S.A. §§ 7321.24(b), 7321.25(a).  In this case, Aslansan filed a motion to modify or correct with the arbitrator, but the arbitrator denied the motion.  Therefore, Appellants' appeal period began running on the date Appellants received notice of the award.

[3] The practical implication of consolidating both types of motions is that a motion to modify or correct would be filed within 30 days (not 90 days) of award receipt, since the time within which to seek modification or correction will be driven by the shorter time within which to seek *vacatur*.

limits in the RSAA for filing a motion to vacate (Section 7321.24(b)) or a motion to modify or correct (Section 7321.25(a)) are jurisdictional, because "[their] plain language . . . deprives the trial court of competency to review the merits of an arbitrator's award if no party challenges the award within [their respective time limits]." **Carr**, 335 A.3d at 1203.

In the present case, Appellants filed a petition in the court of common pleas to "modify and/or vacate" the arbitration award, thus challenging the arbitration award under both Sections 7321.24 and 7321.25. The order denying the petition, however, failed to address whether the issues in Appellants' petition sought *vacatur* under Section 7321.24 or modification under Section 7321.25. Nor did the court of common pleas address this issue in its Rule 1925 opinion. We find it necessary to remand for the court of common pleas to address this issue, because it will determine whether (and to what extent) Appellants' petition was timely.

Appellants raised the following issues in their petition:

[T]he AAA Arbitration Award is a result of irregularities which have caused an unjust, inequitable or unconscionable award to be issued without jurisdiction and/or is the result of evident partiality by the AAA Arbitrator, and/or the AAA Arbitrator exceeding his Arbitrator's powers such that said Award should be vacated and/or modified pursuant to Pa.C.S.A. Title 42 Section 7341[4] and/or 7321.24, where . . . **(1)** the subject Award for "breach of contract" was entered against a party, Murat Aslansan, who was not even a signatory to said contract; **(2)** no allegation let alone evidence in support of "piercing the corporate veil" was ever raised by

_____

[4] 42 Pa.C.S.A. § 7341 does not apply to this case because this statute only governs common law arbitration, not arbitration under the RSAA.

Respondent, Benjamin Tropp, to even attempt to allege putative liability against Murat Aslansan, individually for breach of said contract to which he was not a party the underlying breach of contract claim of Respondent; **(3)** Benjamin Tropp did not include actual contract signatory and co-owner, Jessica Donahue Tropp (who was thereby an indispensable party to the claim as a matter of law) as a party to the arbitration such that the Award was entered without proper jurisdiction; **(4)** the Arbitrator failed to acknowledge the bedrock principle in Pennsylvania contract law that punitive damages are not recoverable in breach of contract actions (thereby further illustrating either manifest bias on the part of the Arbitrator or complete misunderstanding of the pertinent law at issue regarding the underlying arbitration); **(5)** Petitioners were not provided proper notice of the underlying arbitration and were thus denied the opportunity to participate and defend themselves therein; and **(6)** the underlying Award of said Arbitrator awarding $150,516.28 in damages based on a purported contract for which the total contract price was $147,000.00 was manifestly inequitable, unconscionable and/or further evidence of arbitrator bias or misunderstanding of basic legal principles pertaining to contractual law in Pennsylvania?

Memorandum In Support Of Petition To Vacate And/Or Modify Arbitration Award, 10/9/23, at 2 (cleaned up; numerals added in bold).

We have held above that the indispensable party issue raised by Appellants (issue (3) in the above passage) is a question of subject matter jurisdiction that can be raised at any time. Therefore, this issue is not subject to the RSAA's statutory time limits. *See Strasburg Scooters, Northern Forests II, supra.* Furthermore, Appellants' petition is timely to the extent its remaining issues seek modification, since Appellants filed this petition well within ninety days after receiving notice of the award.

To the extent the remaining issues in Appellants' petition seek *vacatur*, however, it is unclear whether they are timely. The arbitrator entered his

- 18 -

award on August 31, 2023. On September 7, 2023, Aslansan emailed a letter to the arbitrator stating that he was "in receipt" of the award. On Monday, October 9, 2023, Appellants filed their petition in the court of common pleas. The record leaves unclear whether Aslansan received notice of the award **on** September 7, 2023 or **before** this date (*i.e.*, between August 31, 2023 and September 6, 2023). If Aslansan received notice on September 7, 2023, the issues seeking *vacatur* were timely, because October 7, 2023, the thirtieth day after September 7, 2023, fell on a Saturday, making Monday, October 9, 2023, the deadline for the petition. *See* 1 Pa.C.S.A. § 1908 ("When any period of time is referred to in any statute, such period in all cases . . . shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday . . . such day shall be omitted from the computation"). If Aslansan received notice before September 7, 2023, then the issues in Appellants' petition seeking *vacatur* were untimely.

Accordingly, we remand this case to the court of common pleas for further limited proceedings. Within the next sixty days, the court of common pleas shall **(1)** obtain briefs from the parties concerning whether the issues in Appellants' petition other than the indispensable party issue seek *vacatur* or modification; **(2)** obtain evidence from all parties (and, if necessary, from the arbitrator or AAA) concerning the date on which Appellants received notice of the arbitration award; and **(3)** enter a supplemental 1925(a) opinion

specifying the date of notice and whether the issues in Appellants' petition other than the indispensable party issue seek *vacatur* or modification.

Case remanded for further proceedings in accordance with this memorandum. Panel jurisdiction retained.