## Mid-City Bank and Trust Company *v.* Myers et al., Appellants.

466

Argued November 24, 1941.  Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Margaret L. Myers,* with her *Frank H. Mancill,* for appellants.

*John M. McNally, Jr.,* with him *Bernard J. Kelley,* for appellee.

OPINION BY MR. JUSTICE PARKER, January 5, 1942:

·This suit in equity was brought in Philadelphia County and the bill was served in that county on Wil-

liam K. Myers, one of the defendants. The court granted plaintiff's petition for extraterritorial service, and on June 10, 1941, the bill was served on the defendant, Margaret S. Myers, in Montgomery County, and on the defendant, Penn Steel Castings Company, in Delaware County. The services were made after two previous defective attempts at service on the parties outside Philadelphia County. Defendants Margaret Myers and the Castings Company obtained rules to show cause why this third service should not be set aside. Those rules were discharged and they have appealed.

The claim of plaintiff is that William K. Myers, while president of the plaintiff corporation, made a secret and private profit out of his official position with the plaintiff and that he received and now holds, as a result, all of the stock of the Penn Steel Castings Company, holding the same in his name and the name of his wife, Margaret S. Myers. The bill asks that an accounting be ordered, that William K. Myers and Margaret S. Myers be enjoined from transferring or assigning any of the shares held by them in said company, and that the Penn Steel Castings Company be enjoined from transferring any of the assets of the Castings Company to the individual defendants.

The main contention of the appellants is that there was no authority in the law for service outside Philadelphia County. We are all of the opinion that, under the facts shown, the Act of April 6, 1859, P. L. 387, sec. 1 (12 PS §1254), was sufficient authority for the service.

"The common law rule in regard to service of process, established by centuries of precedent, has always been accepted as binding in this State. In an action in personam the process must be served personally within the jurisdiction of the court in which the action was commenced, upon the person to be affected thereby. This rule prevails, unless a statute clearly and definitely manifests that a different method as to service has been promulgated by the legislature": *Heaney v. Mauch*

*Chunk Boro.,* 322 Pa. 487, 490, 185 A. 732. As we have indicated, the Act of 1859 did promulgate a different method of service applicable to a proceeding in equity, thereby enlarging the jurisdiction of county courts. The opinions of this court have consistently construed the Act of 1859 as covering two distinct classes of cases. "First, where a suit in equity has been or shall be instituted, concerning goods, chattels, lands, tenements or hereditaments, or for the perpetuating of testimony concerning any lands, tenements and so forth, situate or being within the jurisdiction of the court, or concerning any charge, lien, judgment, mortgage or encumbrance thereon. And second, where the court have acquired jurisdiction of the subject-matter in controversy, by the service of its process on one or more of the principal defendants": *Coleman's Appeal,* 75 Pa. 441, 458. See, also, *Eby's Appeal,* 70 Pa. 311, 314; *Bird v. Sleppy,* 265 Pa. 295, 296, 108 A. 618; *Whittaker v. Miller,* 301 Pa. 410, 412, 152 A. 670.

"There is a wide distinction between a course of judicial procedure, the object of which is to subject the res to the power of the State directly by the judgment or decree which is entered and a procedure which only affects or disposes of the res by compelling a party to the action to control or dispose of the res in accordance with the mandate or decree. The former is a proceeding in rem; the latter is a proceeding in personam": *Atlantic Seaboard Natural Gas Co. v. Whitten,* 315 Pa. 529, 534, 173 A. 305. The bill does not allege that there is property in the County of Philadelphia with which the litigation is concerned and the prayer is for a decree affecting more than property. In short, the action is in personam. It follows that if the service is to be sustained it must be under the second classification.

Appellants assume that in the phrase, "where the court have acquired jurisdiction of the subject-matter in controversy", "subject matter" means "property". They then argue that the property in dispute is the shares of

stock owned by Margaret and William Myers as tenants by entireties, that there is no evidence that the certificates for the shares were in Philadelphia County, and that jurisdiction of the property could not be acquired by service on one of the tenants by entireties.

"By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought; and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred": *Cooper v. Reynolds' Lessee,* 77 U. S. 308, 19 S. Ct. 931, 932. Also, see *Hughes v. Cuming,* 165 N. Y. 91, 58 N. E. 794. The plain words of the section will not support the argument of the appellants. While "subject matter" is often used as a synonym for "property" in *in rem* actions, it is used in a broader and more general sense in this statute. When conferring upon courts jurisdiction of non-residents, a sharp distinction has always been drawn between the word "property" and the term "subject matter" of the action. The latter signifies the nature of the cause of action and of the relief sought and relates to the right to prosecute the particular suit and to obtain the relief demanded. The word "property" is used in a different sense as denoting something tangible or at least something which may be subjected to the process of the court as in cases of attachment or garnishment: *Duckworth v. Mull,* 143 N. C. 461, 55 S. E. 850, 854.

The second provision of the Act of 1859 means that where the court has acquired jurisdiction of the particular controversy by service of its process on a principal defendant it then has power to serve its process on other defendants who can be found within the state. Jurisdiction of the subject matter in the sense here used is determined by the general powers of the court conferred by the sovereign authority. The legislature in enacting the statute had in mind what has been called "venue jurisdiction", that is, the "judicial power of the particular

court to determine the cause": *Monarch Anthracite Mining Co. v. Coffin,* 102 Fed. (2d) 337, 339.

Our conclusion is further fortified by considering the section as a whole. It is plain that the legislature intended to provide for extraterritorial service in actions both in personam and in rem and to make a different provision as to service in actions of a different nature. To adopt the construction urged by the defendants would produce an absurd result.

We deem it advisable to refer to the case of *Clark v. Elkin,* 283 Pa. 339, 129 A. 97, not only since appellants lean heavily upon that case, but because it illustrates an important principle in cases of this nature. There the plaintiff was attempting to secure a controlling interest in a corporation and had obtained options from three different shareholders, but "the commitments of the three owners were distinct, one not being made dependent on the act of the other." In a bill for specific performance personal service was had on two and extraterritorial service was sought on a third. We there stated (p. 344) : "The narrow question presented is whether the parties served are 'principal defendants' within the meaning of our statute. If the contract made with Clark was joint, then this doubtless would be true, but there is nothing set forth which would justify us in saying that the sale by Mrs. Elkin was made dependent upon the transfer by the other stockholders of their interests, since she merely gave to Eyre an option to purchase, and authority to make a sale of her shares. . . . The commitments of the three owners were distinct, one not being made dependent on the act of the other, and we are unable to find that there was any joint undertaking. Though she is doubtless responsible for the breach of her contract, authorized to be entered into by her agent, if such occurred, yet she is not a necessary party in the action for specific performance against Eyre and Mrs. Everett, who were properly summoned. Parties beyond the jurisdiction of the court cannot be brought in merely because it is more

convenient, but there must be a real necessity that they appear, so that a complainant may secure relief to which he is entitled."

This does not mean that in every case arising under the Act of 1859 there must be a finding of a joint undertaking in the sense in which that phrase is ordinarily used. It merely means that the parties against whom the plaintiff has an entirely separate cause of action cannot be brought in by extraterritorial service merely because the plaintiff deems it more convenient. Here it was the principal defendant who was served and the passive defendants have been brought in in order that the plaintiff may have the relief to which he is entitled if he makes out his case.

One of the main errors in the appellants' argument arose by reason of their failure to distinguish between those cases where the extraterritorial service was outside the state and where it was outside the county but inside the state. In an action in personam the state has ordinarily no jurisdiction beyond its confines, while in an action in rem it may acquire jurisdiction by reason of the presence of property notwithstanding defendants may be beyond the state, but the decree or judgment in such case affects the property only: *Pennoyer v. Neff*, 95 U. S. 714, 24 S. Ct. 565.

As we have heretofore stated, two defective services were had before the service on June 10. In each instance appellants obtained rules to show cause why the bill in equity and the service thereof should not be set aside. Through error a docket entry of "Rule Absolute" was made as to each. This error the court subsequently corrected by changing the docket entries to read, "Rule Absolute as to the Setting Aside of Service Only." Appellants argue that the original docket entries made the question of jurisdiction over them res judicata. This argument is without merit. Every court of record has the power to amend its records to make them conform to the facts: *Delco Ice Mfg. Co. v. Frick Co., Inc.*, 318 Pa.

337, 342, 178 A. 135; *Christ v. Dubosky,* 261 Pa. 297, 104 A. 547. By discharging the rule to set aside the service of June 10, the lower court must be deemed to have waived compliance with a requirement which it had imposed of its own volition, particularly since it appeared that the defendants had the information required to be supplied. Appellants have been in no way prejudiced.

The orders of the court below are affirmed at the costs of the respective appellants.