Kelley *v.* Kelley, Appellant.

Argued November 22, 1954; re-argued May 4, 1955. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Leo C. Mullen,* with him *Morris J. Klewans,* for appellant.

*Richard S. Oyler,* with him *Samuel H. Jubelirer* and *William Hollis,* for appellee.

Opinion by Mr. Justice Jones, June 27, 1955:

This appeal, questioning the jurisdiction of the court below, was taken pursuant to the Act of May 5, 1925, P.L. 23, 12 PS §672. Our review is accordingly limited: *Jones v. Jones,* 344 Pa. 310, 311, 25 A. 2d 327.

The appellant poses two questions, viz., one as to the jurisdiction of the court to grant the relief sought and the other as to its jurisdiction of the defendants. The facts, whereof these challenges are predicated, need be recited.

Jeannette Kelley, the plaintiff, filed her complaint in equity on October 20, 1950, in the Court of Common Pleas of Clinton County seeking an accounting by Robert J. Kelley, one of the defendants, of the profits realized by him from a coal mining operation which he had conducted. The complaint averred that the plaintiff, by testate and intestate succession, had become the owner of an undivided one-twenty-fourth interest in certain coal lands situate in Clinton County as a tenant in common with Robert J. Kelley and seventeen other persons, all of whom were named as parties defendant. The complaint further averred that Robert J. Kelley, in his own behalf and as agent for all of the other tenants in common, had profitably conducted mining operations of the coal lands so held in common; that until October, 1944, Robert J. Kelley had accounted to the plaintiff's predecessor in title for profits realized from the operation; and that since November, 1944, when the plaintiff became a tenant in common, Robert J. Kelley has refused to furnish her with an accounting or to pay over to her any portion of the profits derived by him from the indicated coal mining operation. The complaint prayed the court to "enter an order upon the defendant, Robert J. Kelley, to account fully to the plaintiff, Jeannette Kelley, and to the co-defendants . . . in order that the plaintiff may have judgment against the defendant, Robert J. Kelley, for the amount shown to be due her by such accounts, and for such further equitable relief as the Court may deem fit and proper under the circumstances."

Robert J. Kelley and all but two of the other defendants were residents of Pennsylvania, but none of them resided in Clinton County and none was served there with process. The plaintiff, who was also a nonresident of Clinton County, brought her suit there pursuant to Section 24 of the Act of April 25, 1850, P.L. 569, 17 PS §287-288, which provides that, where one (or more) of several tenants in common has removed coal or other minerals from the land held in common, an aggrieved tenant (or tenants) may, by a bill in equity *naming all of the other tenants as defendants,* have an accounting, in the court of common pleas of the county wherein the land is located, of the coal or minerals allegedly taken. Pursuant to further authorization of the Act of 1850, supra, the plaintiff obtained an order of the court below permitting service to be made on the defendants within the Commonwealth by any adult person and on the nonresidents by registered mail. Service was made conformably. Robert J. Kelley entered an appearance *de bene esse* challenging the validity of the substituted service and the jurisdiction of the court to grant the relief sought. A consequent rule on the plaintiff to show cause why the complaint should not be dismissed was discharged, after argument, and Robert J. Kelley brought this appeal.

The only defendant against whom any relief is sought is Robert J. Kelley and the relief so sought as to him is a decree *in personam* for the plaintiff's share of the profits derived from the mining operation. The initial inquiry, therefore, is whether Section 24 of the Act of 1850 authorizes a proceeding *in personam,* as contended for by the plaintiff, or merely a proceeding *in rem,* as argued by the appellant.

Specifically, Section 24 of the Act of 1850, supra, provides that "In all cases in which any coal or iron-ore mines or minerals have been or shall be held by

two or more persons, as tenants in common, and coal, iron-ore or other mineral, has been or shall be taken from the same, by any one or more of said tenants respectively, it shall be lawful for any one of said tenants in common to apply by bill or petition in equity, to the court of common pleas of the county in which the lands lie, praying that an account may be decreed and taken of all coal, iron-ore or other mineral, taken by said tenants, respectively; and the said court shall thereupon proceed upon such bill or petition, agreeably to the course of a court of chancery, and shall have full power and authority to make all orders, appointments and decrees, interlocutory and final, that may appertain to justice and equity, in the premises, and may cause to be ascertained the quantity and value of the coal, iron-ore or other mineral, so taken respectively by the respective parties, and the sum that may be justly and equitably due, by and from, and to them respectively therefor, according to the respective proportions and interests to which they may be respectively entitled in the lands . . . ."

The appellant would have us construe the foregoing statutory provision so as to restrict the jurisdiction in equity, thus conferred on courts of common pleas, to proceedings strictly *in rem*. But, the Act does not warrant any such limited interpretation. On the contrary, its language constitutes a broad grant of equitable jurisdiction to decree an account of coal taken by one tenant from land owned in common with others and "to make all orders . . . that appertain to justice and equity . . . and [to] cause to be ascertained the *quantity and value* of the coal . . . so taken . . . *and the sum that may be justly and equitably due,* by and from, and to" the several tenants in common (Emphasis supplied). It is too plain for extended discussion that Section 24 of the Act of 1850 contains within its compass

a proceeding *in personam* as well as a proceeding *in rem.* Indeed, we have so recognized. In *McIntosh v. Ropp,* 233 Pa. 497, 513, 82 A. 949, Mr. Justice MOSCH-ZISKER, speaking for this court, said that "At the common law, ordinarily an action could not be maintained by a tenant in common against a cotenant in sole possession to recover a share of the profits of the estate . . . but our Act of April 25, 1850, P.L. 569, 573, sec. 24, recognizes such a right where minerals are held in common . . . ." See, also, *Sellers v. Hanratty,* 343 Pa. 316, 319, 22 A. 2d 697, where it was said that under the Act of 1850 equity has unquestionable jurisdiction to compel an accounting between tenants in common.

Neither of the cases cited by the appellant is in point. In *Coleman's Appeal,* 62 Pa. 252, both of the cotenants wished to conduct mining operations in the commonly held land and the relief sought under the Act of 1850 was an accounting of the *ore* taken from the land and not an accounting of the *profits* derived from mining the ore. The purpose of the accounting was to assure an equitable distribution of the ore between the cotenants. Similarly, in *Appeal of Henry Fulmer,* 128 Pa. 24, 18 A. 493, the controlling question before the court was the applicable measure of damages.

From the foregoing, it seems clear enough that the Act of 1850 entitles the plaintiff to the relief *in personam* sought against Robert J. Kelley provided she sustains the averments of her complaint with proper and adequate proofs. And, since the ultimate criterion of a court's jurisdiction is its competency to hear and determine controversies of the general class to which the particular case presented belongs (*Witney v. Lebanon City,* 369 Pa. 308, 312, 85 A. 2d 106), it follows that the appellant's contention that the court below

was without jurisdiction to grant the relief prayed for is untenable.

In support of his alternative challenge of the jurisdiction of the court below over the several defendants, the appellant argues that, even if the Act of 1850 authorizes an *in personam* proceeding, the type of service employed by the plaintiff does not entitle her to *in personam* relief. In that connection, the appellant attacks the service on the defendants who reside in Pennsylvania as well as on those residing outside the State. This contention is likewise without merit.

As to the defendants resident in Pennsylvania, the appellant asserts that the deputized service on them by an adult not within Clinton County was ineffectual to confer jurisdiction on the court below to grant *in personam* relief. It is true that in an *in personam* suit the process must be served personally upon the individual to be affected thereby within the jurisdiction of the court in which the suit was commenced. But, that rule does not prevail where, as here, a "statute clearly and definitely manifests that a different method as to service has been promulgated by the legislature": *Heaney v. Mauch Chunk Borough*, 322 Pa. 487, 490, 185 A. 732; *Mid-City Bank and Trust Company v. Myers*, 343 Pa. 465, 467, 23 A. 2d 420. The Act of 1850 expressly provides that if any of the tenants in common resides "out of the county in which such lands lie, . . . the court may make such order for serving process or notice upon them, by publication or otherwise, as the said court shall deem fit and proper . . . ." As already indicated, the mode of service prescribed by the court below for the defendants resident in Pennsylvania was service by a deputized adult within Pennsylvania, and process was so served. Consequently, it is presently unnecessary to consider the appellant's argument that service on a Pennsyl-

vania resident by publication or other substitution is constitutionally incapable of supporting the entry of a personal judgment or decree against one so summoned. Likewise, since the service in the instant case on the Pennsylvania defendants was made prior to the effective date of our new Equity Rules, it is equally unnecessary to consider what effect, if any, the general superseding provision of Rule 1550 (33) had on the methods of service prescribed by the Act of 1850. By the service approved and adopted in this case, each of the Pennsylvania defendants was given actual notice of the pendency of the proceeding. Moreover, relief was not sought against any of the Pennsylvania residents personally except for the appellant, Robert J. Kelley. And, he is in no position to assert that he was not fully apprised of the claims being made against him. The record confirms his awareness of the litigation and his opportunity to defend. Finally, as to the Pennsylvania residents who were personally served with process within the Commonwealth, it is sufficient to say that there is no constitutional requirement of service within a particular county as a *sine qua non* to the entry of a personal judgment or decree against them.

The appellant's further challenge of the lower court's jurisdiction is based on the premise that the two out-of-State defendant cotenants are indispensable parties to the proceeding. Such being the case, the appellant contends that, since the proceeding is *in personam,* the service of process on the nonresident defendants by registered mail was incompetent to make them proper parties defendant in the plaintiff's suit. The contention is a non-sequitur.

There can, of course, be no doubt that all of the named defendants, including those residing out of the

State, are indispensable parties. As we have already seen, the Act of 1850 expressly requires that "all the tenants in common shall be made parties to such bill or petition." Nor is there any doubt that the absence of an indispensable party goes to the jurisdiction of the court: *Powell v. Shepard,* 381 Pa. 405, 412, 113 A. 2d 261. But, the differentiating fact which the appellant disregards is that, while the relief sought against him is *in personam,* similar relief was not sought against any of the other defendants. Indeed, the appellant readily so admits in his printed brief where he states that he is "the only defendant against whom any relief is sought." The relief specially prayed for by the complaint was relief against Robert J. Kelley personally by way of an accounting and paying over to the plaintiff her proportionate share of the profits derived by him from his coal mining operation on the lands commonly owned. As to the appellant, the proceeding is *in personam,* and the service of process upon him was, *ex necessitate rei,* made personally by a deputy within the Commonwealth. And, while the plaintiff made no claim for personal relief against the other cotenants, the reason for their joinder is evident. Not only did the Act of 1850 make their joinder mandatory but any determination of the sum due the plaintiff by the appellant would necessarily be predicated of a finding of the plaintiff's proportionate interest in both the land and the profits derived therefrom, which determination, by like token, would place a limitation upon the quantum of the interests of the other cotenants. Consequently, to the extent that the instant litigation may adjudicate the interests of the cotenants in the coal lands without requiring them (other than Robert J. Kelley) to do or to refrain from doing a particular act, the proceeding is, as to such parties, one *quasi in rem.* Wherefore, the service of process on the nonresi-

dents, fairly notifying them of the pendency of the suit, comports with the requirements of due process.

In *Amparo Mining Co. v. Fidelity Trust Co.*, 74 N. J. Eq. 197, 71 A. 605, 607, it was stated for the Court of Chancery of New Jersey that "[The] essential elements of an action quasi in rem [are] : (1) A res located within the territorial limits of the state in such a way that the state can, if it see fit to do so, exercise absolute power to control and dispose of it; (2) a course of judicial procedure, the object and result of which are to subject the res to the power of the state directly by the judgment or decree which is entered, as distinguished from a course of procedure which only affects or disposes of the res by compelling a party to the action to control or dispose of the res, in accordance with the mandate of the judgment or decree; (3) a course of judicial procedure on its face directed specifically toward the res so as to disclose this res to the defendant when reasonably notified of the action." The court further observed in the *Amparo* case, supra, that "The state must control all property within its territorial limits" and "the utmost that can be demanded on the part of nonresident defendants [to an action *quasi in rem*] is that they shall be fairly notified of the action so as to have an ample opportunity to appear and be heard therein. When these conditions exist, the rights of all parties interested in the res are determined by due process of law." All of those conditions have been fully met in the instant case. Nor, it may be added, is there any constitutional objection to considering the proceeding as being *in personam* so far as concerns the appellant and as *quasi in rem* so far as concerns the other tenants in common: see *Security Savings Bank v. California*, 263 U. S. 282, 287.

The order of the court below is affirmed at the appellant's costs.