J-A26025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HOWARD CURTIS CRIM | : | No. 214 WDA 2025 |

Appeal from the Order Dated January 28, 2025
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002620-2024

BEFORE:  OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY OLSON, J.:              **FILED: MARCH 3, 2026**

Appellant, the Commonwealth of Pennsylvania (the Commonwealth), appeals from the order entered on January 28, 2025, dismissing the criminal charges of theft by unlawful taking and receiving stolen property lodged against Howard Curtis Crim (Crim) for lack of subject matter jurisdiction and the failure to establish a *prima facie* case that any of the elements of the crimes occurred in Pennsylvania.[1]  After careful consideration, we vacate the order and remand for trial.

We briefly summarize the facts and procedural history of this case as follows.  In March 2024, Marcella Morris moved from Florida to Fairview, Pennsylvania and hired a company to move her belongings.  Crim was one of the movers who unloaded Ms. Ms. Morris' belongings once they reached

---

[1] 18 Pa.C.S.A. §§ 3921(a) (theft by unlawful taking) and 3925 (receiving stolen property), respectively.

Pennsylvania. Upon the arrival of her belongings in Pennsylvania, Ms. Morris asked the movers to unwrap the moving packaging from her jewelry box, which contained her wedding rings. "Officer Gary Byers, an investigator with the Moreland Hills Police Department in Moreland Hills, Ohio … alleged that through his investigation it was determined that [Crim] was involved in jewelry thefts in several states, including Pennsylvania." Trial Court Opinion, 1/28/2025, at 1. Officer Byers "initially investigated an advertisement on Craig's List of [] jewelry (a ring with a 1.47 carat diamond and an 18k gold wedding band welded together) being sold in Pennsylvania." *Id.* After obtaining a search warrant and recovering Crim's cellular telephone, the Ohio police contacted Sergeant Ryan Mays of the Millcreek Township Police Department, and they traced the rings back to Ms. Morris who identified them as hers. Ms. Morris only realized that the rings were missing when the police showed her a photo of them. Thereafter, the Commonwealth charged Crim with the aforementioned offenses.

A preliminary hearing was held on October 8, 2024, wherein Ms. Morris and Sergeant Mays testified. At the conclusion of the preliminary hearing, the trial court bound the criminal charges over for trial. On December 11, 2024, Crim filed an omnibus pre-trial motion and *habeas* petition alleging, *inter alia*, that Pennsylvania courts lacked jurisdiction over the matter. On January 17, 2024, the trial court held a hearing on Crim's pre-trial motion. Therein, the Commonwealth presented the testimony of Ms. Morris, Officer Byers, and

Sergeant Mays. The trial court summarized the testimony from that hearing, more specifically, as follows:

[Officer Byers investigated the previously mentioned] Craig's List ad [and determined it] was connected to [Crim's] mobile [telephone] number. After obtaining a warrant to search [Crim's] residence, (owned by [Crim's] mother), [Crim's] cellphone was found and identified. In the phone, images of jewelr[y] were retrieved, including the subject jewelry posted on Craig's List. Also on the phone were conversations by [Crim] with an alleged "Gold Guy" to whom [Crim] was allegedly selling the subject jewelry. The Commonwealth [presented] the data from [Crim's] cellphone, which included a screen[shot] of the photo of the subject jewelry and two (2) screen[shots] of the alleged [text] conversations between [Crim] and "Gold Guy" [, as well as Ms. Morris' address in Fairview, Pennsylvania]. On cross-examination, Officer Byers confirmed that [Crim] admitted during the search [that the seized cellphone] was his, but [Officer Byers] also acknowledged [] that [he] did not have any evidence that [Crim] obtained the rings in Pennsylvania.

[… Sergeant] Mays [] confirmed receiving a jewelry theft investigation report from Officer Byers. Upon receipt of the report, [Sergeant] Mays testified that they traced the address from [Crim's] cellphone to [] Ms. Morris [and] Ms. Morris identified the ring as hers once the photograph (found in [Crim's] cellphone) was shown to her. During cross-examination, it was established that [] Ms. Morris had moved from Florida to Fairview, Pennsylvania and she used a moving company to help her relocate. Sergeant Mays confirmed that he had no information about "Gold Guy" or whether "Gold Guy" is in Pennsylvania, of if [Crim] came into possession of the subject jewelry in Pennsylvania. He also agreed that he did not have any knowledge about the route the movers took to transport the properties of [] Ms. Morris from Florida to Pennsylvania.

[Ms. Morris] confirmed [her move] from Florida to Fairview, Pennsylvania at the end of March 2024 and hiring a moving company to [assist her]. She testified that the individuals with the moving company in Florida were not the same people as the ones in Pennsylvania, and that there were two people [] unloading [in Pennsylvania] that she did not recognize. She confirmed that she had not [examined the] inventory of her properties after

moving and that she only realized that she lost her rings when the police showed that photo of her rings to her. The Commonwealth presented [an] appraisal document regarding [the value of Ms. Morris'] rings. On cross-examination, it was established that Ms. Morris did not know the route that the movers took in transporting her properties. She was also unaware when the rings were removed from her possession.

Thereafter, the Commonwealth rested. [Crim] did not present any evidence, but maintained that the Commonwealth failed to prove a *prima facie* case that any of the elements of the [alleged] offenses [] occurred in Pennsylvania.

*Id.* at 1-3 (original footnote incorporated).

On January 28, 2025, the trial court filed an opinion and order dismissing the charges. Ultimately, the trial court determined that the Commonwealth failed to establish a *prima facie* case that the elements of the crimes of receiving stolen property and/or theft by unlawful taking occurred in Pennsylvania:

In the instant case, there was not sufficient proof presented that it was [Crim] that took the rings from Ms. Morris. Mere photographs of the rings on [Crim's] phone and text messages to a certain "Gold Guy" may be proof of possession of the stolen property, but those do not indicate that it was [Crim] who unlawfully took the rings from Ms. Morris. Also, it was not sufficiently established if the rings were taken in Pennsylvania or whether they were moved from Pennsylvania to another state. The Commonwealth was able to establish that: Ms. Morris was in the process of moving from Florida to Fairview, Pennsylvania; a photograph of the stolen ring[s] was found on a Craig's List post and later in the cellphone of [Crim] that was found and seized in Ohio; Ms. Morris identified the rings on the photo as hers, which she did not realize[] were missing until she was contacted by [Ohio p]olice; and the appraised value of the rings. However, there was insufficient evidence to prove, even at a *prima facie* level, that [Crim] received [the rings] in Pennsylvania.

- 4 -

*Id.* at 4-5. This timely appeal resulted.[2]

On appeal, the Commonwealth asks this Court whether the trial court erred by finding the Commonwealth failed to put forth *prima facie* evidence of theft by unlawful taking and receiving stolen property, arguing "the aforementioned crimes occurred in Pennsylvania, and thus, … Erie County ha[d] jurisdiction to hear this matter."[3] Commonwealth's Brief at 3. In sum, the Commonwealth argues:

_____

[2] The Commonwealth filed a timely notice of appeal on February 14, 2025. On February 18, 2025, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 17, 2025, the Commonwealth filed a *nunc pro tunc* Rule 1925(b) statement, acknowledging that its Rule 1925(b) was late and due on March 15, 2025. Counsel for the Commonwealth asked the court to consider the late statement because the last day for filing fell on a Sunday and counsel was ill before the deadline. The trial court accepted the late filing and issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 11, 2025, which largely adopted the rationale from its earlier opinion issued on January 28, 2025. Finally, we note that the Commonwealth presented two additional issues in its Rule 1925(b) statement, alleging that the trial court erred when it prohibited the Commonwealth from eliciting testimony from Officer Byers "regarding what he was told by a pawn shop owner" and that the trial court "erroneously indicated that the Ohio Officer did not know if the pawn shop owner was from Ohio." *See* Trial Court Opinion, 4/11/2025, at 2. The Commonwealth has not presented these issues on appeal, and we find them abandoned and waived. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (citation omitted) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or failed to develop any other meaningful fashion capable of review, that claim is waived."); *see also Commonwealth v. Heggins*, 809 A.2d 908, 912 (Pa. Super. 2002) (an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived).

[3] We note that the Commonwealth's brief failed to include a statement of the questions involved pursuant to Pa.R.A.P. 2111(a)(4). We caution the
*(Footnote Continued Next Page)*

In the instant case, the Commonwealth put forth evidence that [Ms. Morris] owned pieces of moveable property in the form of two rings[]. It was further evidenced that these rings were taken by [Crim] after he and other movers unloaded [Ms. Morris'] jewelry box from the moving trailer. Specifically, [Ms. Morris] saw the wrapped-up jewelry box that contained those rings **in Pennsylvania** and specifically asked the unloaders (including [Crim]) to remove the wrapping while they were unloading it, so that she could access the contents later. It is reasonable to infer that [Crim] took the rings after the jewelry box was unwrapped in Pennsylvania, and brought them to his home in Ohio, where he could ultimately pawn the rings to a person that was in his phone contacts as "Gold Guy." It is reasonable to infer that [Crim], the owner of the [cell]phone seized [by Ohio police], was the one who sent text messages of [Ms. Morris'] jewelry from his phone to Gold Guy to set up a sale of the precious metals. Therefore, [Crim's] texts to Gold Guy stating that he had gold to get rid of also are evidence of [Crim's] intent to keep the value of the rings for himself and not restore them to the owner[, Ms. Morris].

Commonwealth's Brief at 8-9 (emphasis in original; record citations omitted).

Our Supreme Court has previously determined:

[T]he question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law. [The appellate] standard of review over such questions is *de novo* and our scope of review is plenary.[4]

\* \* \*

Pennsylvania law provides:

---

Commonwealth to follow our appellate rules; however, our judicial review is unhampered in this case as we are able to glean the issue from the parties' arguments and the trial court opinions.

[4] Likewise, "a challenge to the trial court's subject matter jurisdiction, [] presents a question of law for which our standard of review is *de novo*." **_Commonwealth v. Maldonado-Vallespil_**, 225 A.3d 159, 161 (Pa. Super. 2019).

The basic principles of law with respect to the purpose of a preliminary hearing are well established. The preliminary hearing is not a trial. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention. At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it.

A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury. A judge at a preliminary hearing is not required, nor is he authorized to determine the guilt or innocence of an accused; his sole function is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint. An offense on which the Commonwealth has met its burden will be held over for trial; at the trial, of course, the Commonwealth's burden is to establish guilt beyond a reasonable doubt. The weight and credibility of the evidence are not factors at the preliminary hearing stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense.

Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case. The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established. The more-likely-than-not test, must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability. The more-likely-than-not test is the minimum standard — anything less rises no higher than suspicion or conjecture.

*Commonwealth v. Perez*, 249 A.3d 1092, 1102–1103 (Pa. 2021) (internal citations, quotations, and ellipsis omitted); *see also* Pa.R.Crim.P. 542(D) ("At the preliminary hearing, the issuing authority shall determine from the

evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it."). "To make this determination, the trial court should accept into evidence the record from the preliminary hearing as well as any additional evidence which the Commonwealth may have available to further prove its *prima facie case*" which may be presented at a subsequent *habeas* proceeding. ***Commonwealth v. Morman***, 541 A.2d 356, 360 (Pa. Super. 1988).

Moreover, we have previously described the extent of a Pennsylvania trial court's authority to adjudicate offenses that arise under our Crimes Code:

> Subject matter jurisdiction "relates to the competency of the individual court ... to determine controversies of the general class to which a particular case belongs." ***Green Acres Rehab. & Nursing Ctr. v. Sullivan***, 113 A.3d 1261, 1268 (Pa. Super. 2015). "The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved ...." ***In re Patterson's Estate***, 19 A.2d 165, 166 (Pa. 1941). Moreover, it is "well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void ...." ***Com. ex rel. Howard v. Howard***, 10 A.2d 779, 781 (Pa. Super. 1940). The question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*. ***Grimm v. Grimm***, 149 A.3d 77, 82 (Pa. Super. 2016).
>
> ***Strasburg Scooters, LLC v. Strasburg Rail Road, Inc.***, 210 A.3d 1064, 1067-1068 (Pa. Super. 2019).
>
> In accordance with our Crimes Code, "a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct [if] the conduct which is an element of the offense or the result which is such an element occurs **within this Commonwealth**." 18 Pa.C.S.A. § 102(a)(1) (emphasis added).

*Maldonado-Vallespil*, 225 A.3d at 161–162 (emphasis in original).

The Commonwealth charged Crim with theft by unlawful taking which statutorily provides, in pertinent part:

> **(a) Movable property**.-- A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a). "Deprive" is defined as "[t]o withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation." 18 Pa.C.S.A. § 3901.

Additionally, the Crimes Code defines receiving stolen property as follows:

> **(a) Offense defined**.--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.
>
> **(b) Definition**.--As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. § 3925.

This Court recently reiterated that "mere possession of stolen property …. alone, is insufficient evidence to permit an inference of [] guilty knowledge that the items were stolen." *Commonwealth v. Carter*, 332 A.3d 867, 874 (Pa. Super. 2025). However, we also stated that "additional circumstantial

evidence" regarding an accused's conduct may "establish[] a *prima facie* case …for receiving stolen property." **Carter**, 332 A.3d at 875. More specifically, the **Carter** Court recognized:

> The second element of receiving stolen property is sometimes referred to as "guilty knowledge." Mere possession is insufficient to establish or permit an inference of guilty knowledge, something more than mere possession is generally involved and requires consideration. For instance, the Commonwealth may introduce evidence regarding the nature of the goods, the quantity of the goods involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels. Such evidence will permit a fact-finder to infer guilty knowledge, particularly where there is no satisfactory explanation for a defendant's possession of recently stolen goods.

*Id.* at 873 (internal citations and most quotations omitted). Finally, we note that "the crime of receiving stolen property is a lesser included offense of theft by unlawful taking, and where evidence supports a claim of receiving stolen property, the same evidence also supports a claim of theft." *Id.* at 874-875 ("Therefore, since the evidence was sufficient to support each element of receiving stolen property, the Commonwealth also established a *prima facie* case against Carter for theft by unlawful taking.").

Here, the trial court determined that there was insufficient evidence to show that Crim took the rings, merely because he had photographs of the rings and text messages to "Gold Guy." Instead, the trial court opined that such evidence was only "proof of possession of the stolen property, [and did] do not indicate that it was [Crim] who unlawfully took the rings from Ms. Morris." Trial Court Opinion, 1/28/2025, at 5. Moreover, the trial court

- 10 -

determined that there was no *prima facie* evidence showing the property was "taken in Pennsylvania or whether [the rings] were moved from Pennsylvania to another state." *Id.* The trial court focused on the fact that the move took place from Florida to Pennsylvania and traversed multiple states in an unknown route and, eventually, Crim's cellular telephone, the photograph of the rings, and stolen rings were found in Ohio, where he lived. *Id.*

For the reasons that follow, we disagree with the trial court's analysis and conclude it erred as a matter of law in dismissing the charges. Detective Gary Byers testified that while investigating jewelry thefts, he discovered that Crim answered an advertisement on Craig's List and was hired "to do a temporary moving job" for Ms. Morris. N.T., 1/17/2025, at 6. On April 3, 2024, Crim "responded through his cell phone that he would take the job. They would meet at 1:30 [p.m.] at the residence [in] Fairview[, Pennsylvania.]" *Id.* at 11. As such, there was evidence that Crim had Ms. Morris' Pennsylvania address on his cellular phone. Moreover, at the preliminary hearing, Ms. Morris physically identified Crim in court as one of the movers who was at her residence on April 3, 2024. N.T., 10/8/2024, at 5; *see also id.* at 11 (Ms. Morris confirmed her identification of Crim as one of her Pennsylvania movers after she "was given a photo."). Sergeant Ryan Mays testified that information reviewed from Crim's cellular telephone revealed a photograph of the rings, timestamped as taken on April 3, 2024, the same day Crim was in Pennsylvania to assist with the move. *Id.* at 29. Sergeant Mays further testified that Crim was subsequently "communicating

with 'Gold Guy'" to sell the rings the following morning, April 4, 2024. *Id.* Sergeant Mays asked "Ms. Morris [to] view[] the photo of the ring[s] from these messages [and] she provided an appraisal report that [had] photographs of the ring[s] in question, which matched the ring[s] from the text message." *Id.* at 30-31; *see also id.* at 38-39 (Ms. Morris confirmed Sergeant Mays' testimony regarding identification of her rings); *see also* N.T. 10/8/2024, at 8-9 (same). Detective Byers testified similarly, stating that Crim took a photograph of the rings on the day of the move and, the next day, text messaged Gold Guy and asked if he was interested in buying "30 grams" of gold jewelry. N.T., 1/17/2025, at 13; *see also id.* at 21 ("[Crim] obtained his jewelry from victims, and got rid of it within a very short timeframe; a day or two. Hence the timeline of taking the photo on the 3rd and trying to dump it by the 4th."). When asked whether there was evidence to suggest the rings were taken in Pennsylvania, Sergeant Mays further opined, "the timeline of the messages" found on Crim's cellular telephone. *Id.* at 33; *see also* N.T., 10/8/2024, at 26 ("[T]he messages show the victim's [Pennsylvania] address and that [Crim] was coordinating to meet and help move the property for the victim, [they] also show[ the date of] the morning of the move and also show[] a photo of the victim's two rings[, taken the following morning]."). Finally, Ms. Morris testified that her jewelry box, where she last saw the rings, was unloaded in Pennsylvania and she asked the movers if "they would unwrap the moving packaging so that [she] could at least access [her] jewelry box." N.T., 1/17/2025, at 46.

Viewing the evidence in the light most favorable to the Commonwealth as required, we conclude that the evidence presented established *prima facie* evidence that a crime was committed in Pennsylvania and that the accused is probably the one who committed it. First, the Commonwealth presented sufficient evidence that, if believed, would establish each of the material elements of the offenses charged. Second, the Commonwealth presented sufficient proof, through reasonable inferences, that Crim was more-likely-than-not criminally culpable in Pennsylvania. While mere possession of stolen property alone is insufficient to satisfy the elements of both theft charges, the additional circumstantial evidence of photographs taken on the day that Crim had access and opportunity to steal the rings in Pennsylvania coupled with the immediate communication with Gold Guy for the sale of gold jewelry the following day, supported the inference of guilty knowledge and a logical consequence linking him to the theft of the items. As permitted, the Commonwealth set forth evidence regarding the one-day lapse of time between the possession and theft and the ease with which the goods were assimilated into trade channels. Hence, the Commonwealth provided *prima facie* evidence that Crim unlawfully took moveable property in Pennsylvania with inferred guilty knowledge and intention to deprive the victim of her property permanently. We find that the trial court erred by finding that the Commonwealth failed to produce *prima facie* evidence that the elements of the offenses occurred in Pennsylvania and that Crim was more-likely-than-not the one who committed them. Accordingly, subject matter jurisdiction in

Pennsylvania was properly established. The Commonwealth has met its burden to have the charges held over for trial but will have to establish guilt beyond a reasonable doubt at that trial. For all of the foregoing reasons, the Commonwealth is entitled to relief. Hence, we vacate the order dismissing the criminal charges and remand for trial.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/3/2026